**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

QUANTINA WHITE, )
 )
 Plaintiff, )
 )
 v. ) 1:15cv281
 )
CENTER FOR CREATIVE LEADERSHIP, )
et al., )
 )
 Defendants. )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on the "Motion to Dismiss of Defendant Center for Creative Leadership" (Docket Entry 11) (the "Motion to Dismiss"); "Plaintiff's Motion for Leave to File Amended Complaint" (Docket Entry 16) (the "Initial Leave Motion"); and "Plaintiff's Motion for Leave to File Amended Complaint" (Docket Entry 31) (the "Revised Leave Motion"). For the reasons that follow, the Court will grant in part the Revised Leave Motion, thereby mooting the Initial Leave Motion and Motion to Dismiss.

## BACKGROUND

On March 31, 2015, Quantina White ("White") filed an application to proceed in forma pauperis (Docket Entry 2) (the "IFP Application") and a Complaint alleging sex-based pay discrimination against the Center for Creative Leadership (the "Center") and three Center employees (Docket Entry 3; see also Docket Entry 3-1 at 2).[1]

---

[1] Citations herein to Docket Entry pages utilize the document's internal pagination if unified internal pagination exists. In the absence of such pagination, the Docket Entry page

White attached to her Complaint an EEOC "Dismissal and Notice of Rights" (the "Notice") (Docket Entry 3-1 at 2) and associated EEOC instructions for "filing suit in Federal or State court" under, inter alia, Title VII of the Civil Rights Act ("Title VII") and the Equal Pay Act ("EPA") (id. at 3). The Notice and instructions cautioned that (i) any lawsuit under Title VII "**must be filed WITHIN 90 DAYS of [White's] receipt of th[e N]otice,**" and (ii) any lawsuit under the EPA "must be filed . . . within 2 years (3 years for willful violations) of the alleged EPA underpayment." (Id. at 2 (emphasis in original); see also id. at 3.) In her IFP Application, White explained that she intended to pay the court filing fees "by May 1, 2015," but she filed the IFP Application and Complaint because she "d[id]n't want to miss the filing deadline of March 31, 2015." (Docket Entry 2 at 1.)[2]

White's lawsuit challenges the Center's allegedly discriminatory pay practices. (See Docket Entry 3 at 2-3; see also Docket Entry 32-1 at 1.) According to her EEOC charge, White worked as a Program Coordinator (a "PC") for the Center from July

---

citations utilize the CM/ECF footer's pagination.

2 The envelope enclosing the Notice and instructions bears a December 31, 2014 postmark (Docket Entry 3-1 at 1), making March 31, 2015 the earliest possible Title VII filing deadline (see id. at 2-3). Conversely, because the alleged pay discrimination occurred between July 2013 and May 2014 (see Docket Entry 32-1 at 1), July 2015 constitutes the earliest possible filing deadline that permits recovery of all "alleged EPA underpayment[s]" (Docket Entry 3-1 at 2).

2

2012 through May 2014. (Docket Entry 32-1 at 1.)[3] White's EEOC charge asserts that White "was fully trained and proficient in [her] duties and [her] performance was excellent," but that "[i]n July 2013[, she] learned that newly hired full-time PC Darryl Powell (M[ale]) [("Powell")] was earning $14.40 per hour while [she] was still earning [her] starting wage of $13.75 per hour." (Id.)[4] The EEOC charge states that White reported this wage disparity, but "[n]othing was done to correct [it;]" subsequently, however, White received "a wage increase to $14.13 per hour, which [wa]s still below what [her] male peer was earning." (Id.) The EEOC charge thus maintains that White "ha[s] been discriminated against due to [her] sex (Female), paid less than a male peer [she] was assigned to train, and constructively discharged in violation of Title VII." (Id.)

Through her Complaint, White seeks "[b]ack pay in the amount of the total number of hours worked, during the time the discriminatory pay was in effect, times the difference in pay

---

  3 White filed an unsigned copy of her EEOC charge with her Initial Leave Motion. (Docket Entry 16-1 at 1.) The Center filed a signed copy of White's EEOC charge with its opposition to the Revised Leave Motion. (Docket Entry 32-1.) The Court takes judicial notice of White's EEOC charge. See Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); Robinson v. Bowser, No. 1:12cv301, 2013 WL 3791770, at *5 (M.D.N.C. July 19, 2013); see also Alexander v. City of Greensboro, No. 1:09-cv-293, 2011 WL 3360644, *6 (M.D.N.C. Aug. 3, 2011).

  4 White worked part-time until September 2012, when she was "hired on a full-time basis." (Docket Entry 32-1 at 1.)

3

multiplied by two for discrimination." (Docket Entry 3 at 3.) Although White's EEOC charge focuses on Title VII, her Complaint speaks in terms of the EPA. (See id. at 1 ("This action arises under the Equal Pay Act of 1963."); see also id. at 3 (requesting EPA liquidated damages).) The Complaint outlines White's employment history with the Center as well as the EEOC investigation of White's "EEOC complaint for pay discrimination on the basis of sex" (id. at 3), but provides few details regarding the alleged pay discrimination. (See id. at 2-3.)

Contending that White failed to adequately allege an EPA claim, the Center moved to dismiss White's Complaint. (See Docket Entries 11, 12.) White opposed dismissal, explaining that, because she "filed Complaint 1:15-CV-281 as an extension of the original EEOC complaint, [she] did not regurgitate the facts of the complaint and instead added factual background to supplement the complaint." (Docket Entry 15 at 1.) White further asserted that, "[a]s shown in the EEOC complaint filed by [White] which is extended by Civil Action No. 1:15-CV-281, [White] names the male co-worker that was paid more than [White] and the pay discrepancy." (Id.) White requested that (i) "the original EEOC complaint filed be added to this Complaint" and (ii) the Court deny the Motion to Dismiss because the "[d]efendants were fully aware of the original EEOC complaint, which is extended by the current Complaint, and adequately provides the minimum elements of an EPA claim." (Id.)

4

Simultaneously, White filed the Initial Leave Motion and a proposed amended complaint (the "Initial Proposed Amended Complaint"), which recount facts from White's EEOC charge regarding Powell and White's asserted pay differential. (See Docket Entry 16 at 2, 6.)[5] The Center opposed the Initial Leave Motion primarily on the grounds that, allegedly, (i) the Initial Proposed Amended Complaint fails to adequately plead an EPA claim and (ii) White's EPA claim fails on its merits. (See Docket Entry 24 at 8-11.)[6] In support of its merits contention, the Center offered purported pay records. (Id. at 11; see also Docket Entries 24-1 through 24-5.)

The Center's opposition prompted White to "resubmit[] her Motion to File Amended Complaint" to reflect "that [she] not only received discriminatory pay based on sex but based on race as well." (Docket Entry 30 at 1.) White submitted a revised proposed amended complaint (the "Revised Proposed Amended Complaint") with her Revised Leave Motion. (See Docket Entry 31-1.) Although asserting that "[t]his action arises under . . . Title VII" rather than the EPA as in the Initial Proposed Amended Complaint, the Revised Proposed Amended Complaint likewise seeks "[b]ack pay in the amount of the total number of hours worked, during the time the

---

5   White attached her EEOC charge to the Initial Proposed Amended Complaint. (See Docket Entry 16-1 at 1.)

6   The Center also objected to White's failure to sign the Initial Leave Motion. (See Docket Entry 24 at 7-8.) White has rectified that oversight. (See Docket Entry 27 at 3, 6-7.)

5

discriminatory pay was in effect, times the difference in pay multiplied by two for discrimination." (Id. at 1, 4.)

The Revised Proposed Amended Complaint augments the allegations of the Initial Proposed Amended Complaint with further details regarding Powell's and White's job responsibilities and wages. (Compare id. at 2-3, with Docket Entry 16 at 5-6.) In addition, the Revised Proposed Amended Complaint includes race-based discrimination allegations. (See Docket Entry 31-1 at 4 (asserting that two female employees were paid higher wages than White and suggesting that this pay differential was race-based); see also Docket Entry 31 at 3 (asserting that the defendants "knowingly paid two white female employees more than [White], a black female employee, for the same position and responsibilities").)[7] The Revised Proposed Amended Complaint alleges that White learned of this racial discrimination "[o]n September 30, 2015, [when she] received pay rate information from the [d]efendants," prompting her to "file[] an updated EEOC complaint for discrimination of pay due to race under Title VII." (Docket Entry 31-1 at 4.)

The Center opposed the Revised Leave Motion on the grounds of futility. (See Docket Entry 32 at 6-10.) Specifically, the Center

---

7 The Revised Proposed Amended Complaint largely mirrors the Revised Leave Motion, but omits the "First Cause of Action" allegations found in the Revised Leave Motion. (Compare Docket Entry 31 at 3, with Docket Entry 31-1 at 4.)
6

contends that White's Title VII claim "is time-barred for failure to file within 90 days of receipt of her [Notice], and/or is barred for her failure to timely exhaust administrative remedies." (Id. at 3.) The Center also maintains that White "has abandoned her EPA claim" through her Revised Leave Motion. (Id. at 10.)

## DISCUSSION

### I. Amendment Standards

At this stage of the proceedings, White may amend her Complaint "only with the [defendant's] written consent or the [C]ourt's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 of the Federal Rules of Civil Procedure (the "Rules") specifies that "[t]he [C]ourt should freely give leave [to amend] when justice so requires." Id. "[T]his mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [s]he ought to be afforded an opportunity to test h[er] claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962) (citation omitted); see also Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir. 1978) ("What might be a meritorious claim on the part of a pro se litigant unversed in the law should not be defeated without affording the pleader a reasonable opportunity to articulate h[er] cause of action."). The United States Court of Appeals for the Fourth Circuit has "interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to

7

the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc); see also Foman, 371 U.S. at 182 (explaining that, absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.[,] the leave sought should, as the [R]ules require, be 'freely given'"). The Fourth Circuit has further explained that "absence of prejudice, though not alone determinative, will normally warrant granting leave to amend." Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980).

Here, the Court must determine whether White's request to amend her Complaint, as expressed in the Revised Leave Motion and Revised Proposed Amended Complaint, is futile. (See Docket Entry 32 at 6-10.) "Determining whether amendment would be futile does not involve an evaluation of the underlying merits of the case. Rather, the merits of the litigation are only relevant to the Court's ruling on a motion for leave to amend if a proposed amendment may clearly be seen to be futile, such as if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." Wonasue v. University of Md. Alumni Ass'n, 295 F.R.D. 104, 107 (D. Md. 2013) (internal quotation marks and citations omitted); see also Superior Performers, Inc. v.

8

Meaike, No. 1:13CV1149, 2014 WL 5819826, at *2 (M.D.N.C. Nov. 10, 2014) ("[A]s to futility, leave to amend should only be denied based on futility when the proposed amendment is clearly insufficient or frivolous on its face. Such [f]utility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." (second alteration in original; internal quotation marks and citation omitted)). Moreover, if proposed claims are untimely, the Court may deny the amendment unless the proposed claims relate back to the original, timely complaint under Rule 15(c). United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000); Davis, 615 F.2d at 614.

**II. Proposed Title VII Sex Discrimination Claim**

The Center contends that White's proposed Title VII sex discrimination claim is time-barred. (See, e.g., Docket Entry 32 at 6-8.) Specifically, the Center maintains that, "[p]ursuant to Title VII, [White] had until March 31, 2015 to file a lawsuit for sex discrimination. Rather than filing a lawsuit alleging sex discrimination under Title VII, [White] based her lawsuit on the EPA." (Id. at 7 (citation omitted).) In the Center's view, White's "original complaint with purported EPA claims does not toll her 90-day statute of limitations for filing a Title VII sex discrimination claim." (Id.)[8]

---

[8] The Center cites three (inapposite) cases in support of its timeliness contention: Angles v. Dollar Tree Stores, Inc., 494 F. App'x 326 (4th Cir. 2012); Yarborough v. Burger King Corp., 406 F.

9

Under Rule 15(c), however, White's proposed Title VII sex discrimination claim "would clearly relate back [to her Complaint]. It obviously meets the test of the rule that it allege matter arising out of the same occurrence as that set forth in the original pleading, thereby insuring that the defendant knew of the action's commencement and of its nature in time to avoid any prejudice to his defense on the merits." Davis, 615 F.2d at 614. To wit, White's proposed Title VII sex discrimination claim and her EPA claim arise from the Center's allegedly discriminatory pay differential between PCs Powell, a male, and White, a female, from July 2013 to May 2014. (See Docket Entries 3, 15, 16-1, 31-1.) Thus, White's proposed "amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ.

---

Supp. 2d 605 (M.D.N.C. 2005); and Bledsoe v. Pilot Life Ins. Co., Inc., 473 F. Supp. 864 (M.D.N.C. 1978), aff'd, 602 F.2d 652 (4th Cir. 1979). (See Docket Entry 32 at 6-7.) None of these cases involves a plaintiff's request to amend an otherwise timely complaint to add a Title VII claim; instead, they involve parties' attempts to initiate lawsuits and/or comply with Title VII administrative filing requirements. See Angles, 494 F. App'x 326 (finding no grounds to toll Title VII filing deadlines, and concluding that denied motion for leave to file amended complaint in separate EPA action did not toll deadline for bringing Title VII suit); Yarborough, 406 F. Supp. 2d 605 (finding no grounds for tolling Title VII filing deadline where action filed outside 90-day deadline); Bledsoe, 473 F. Supp. 864 (concluding that filing EPA claim with the Department of Labor's Wage & Hour Division did not satisfy plaintiff's obligation to file Title VII claim with the EEOC, and finding no grounds for tolling Title VII filing deadlines).

P. 15(c)(1)(B). Accordingly, it relates back to the filing of White's Complaint on March 31, 2015 (see Docket Entry 3 at 1), rendering it timely. See Davis, 615 F.2d at 614 (reversing denial of leave to amend complaint where proposed amendment "relates back in legal effect to the date of commencement of the action"). The Court will therefore grant White leave to add her proposed Title VII sex discrimination claim to an amended complaint.

### III. Proposed Title VII Race Discrimination Claim

The Center contends that White's proposed Title VII race discrimination claim is futile because White failed to timely exhaust her administrative remedies on this claim. (See Docket Entry 32 at 8-10.) To bring a Title VII claim, a plaintiff must first exhaust her administrative remedies by filing a charge with the EEOC. Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). A litigant generally must file an EEOC charge within 180 days of the allegedly discriminatory act. See 42 U.S.C. § 2000e-5(e)(1).[9] The timely filing requirement "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).

---

[9] The 180-day filing period extends in certain circumstances to a maximum of 300 days. See 42 U.S.C. § 2000e-5(e)(1).

11

This "EEOC charge defines the scope of [the plaintiff's] subsequent right to institute a civil suit. If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." Smith, 202 F.3d at 247 (citation omitted). Thus, "a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the [EEOC]." Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992) (internal quotation marks omitted). Nevertheless, "a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009).

White "last worked [for the Center] on May 30, 2014." (Docket Entry 32-1 at 1.) She "filed an updated EEOC complaint for discrimination of pay due to race" on or after September 30, 2015. (Docket Entry 31 at 3; Docket Entry 31-1 at 4.) Filed more than a year after the last alleged discriminatory action, White's "updated EEOC complaint" is untimely. See 42 U.S.C. § 2000e-5(e)(1). White advances no grounds for excusing the timely filing requirement. (See Docket Entries 30, 31, 31-1.)

12

Liberally construed, however, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), White's filings contend that her initial EEOC charge encompasses her Title VII race-based discrimination claim (see Docket Entry 30 at 1). White's initial EEOC charge describes sex-based discrimination, without mentioning race. (See Docket Entry 32-1 at 1.) White states that she first learned of the alleged racial discrimination on September 30, 2015. (See Docket Entry 30 at 1; Docket Entry 31 at 1, 3; Docket Entry 31-1 at 4.) As such, White implicitly concedes that the administrative investigation of her sex-based EEOC charge did not address race-based discrimination. See Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 (4th Cir. 2002) ("Administrative investigation of . . . sex discrimination, however, could not reasonably be expected to occur in light of [the plaintiff's] sole charge of race discrimination, and the investigation of the complaint did not touch on any matters other than race discrimination."); cf. Salmon v. South Carolina Elec. & Gas, Civ. Action No. 3:14-4493, 2015 WL 3441144, at *4 & n.3 (D.S.C. May 28, 2015) (concluding that the "[p]laintiff's retaliation claim based on age would follow from a reasonable administrative investigation" of his EEOC charge detailing, inter alia, "retaliation under Title VII," and observing that "[the p]laintiff argues in his response, and [the d]efendant has not disputed, that [the d]efendant 'addressed potential retaliation in violation of the ADEA in its [EEOC] response'").

13

Accordingly, White failed to timely exhaust administrative remedies on her Title VII race discrimination claim. The Court therefore denies as futile White's request to add a Title VII race discrimination claim to her lawsuit. See Brown v. Henderson, 6 F. App'x 155, 156 (4th Cir. 2001) (affirming denial of motion for leave to amend complaint where the plaintiff "failed to timely pursue her administrative remedies").[10]

### IV. EPA Claim

Finally, the Center maintains that White "abandoned her EPA claim" through her Revised Leave Motion. (Docket Entry 32 at 10-11.) The Court disagrees with the Center's assertion that White "proposes an entirely new complaint, with new allegations" (id. at

---

10 An otherwise barred "discriminatory allegation may still constitute relevant background evidence for valid claims." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (citing United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977)); see also Keener v. Universal Cos., Inc., ___ F. Supp. 3d ___, ___, No. 1:14CV982, 2015 WL 5130866, at *9 (M.D.N.C. Sept. 1, 2015) ("Although this court has found that [the p]laintiff has not exhausted her hostile work environment claim, these allegations could nonetheless possibly serve as evidence to support her properly asserted sex discrimination claim."). Accordingly, if relevant to her sex-discrimination claim(s), White may offer evidence, if it exists, that race discrimination caused the alleged pay differential between White and the female employees. See Branch v. United States, 101 Fed. Cl. 411, 415 (2011) (concluding that male plaintiff did not establish EPA claim where, inter alia, "more women are affected by this alleged pay disparity than men"); see also Brewster v. Barnes, 788 F.2d 985, 992 (4th Cir. 1986) ("The Equal Pay Act 'has been structured to permit employers to defend against charges of discrimination where their pay differentials are based on a *bona fide* use of "factors other than sex."'" (emphasis in original) (quoting County of Wash. v. Gunther, 452 U.S. 161, 170 (1981))).

14

10) in her Revised Leave Motion.  (Compare Docket Entry 31-1, with Docket Entry 16 at 4-6.)  White's proposed Title VII sex discrimination claim and her EPA claim are "parallel" claims. Buntin v. Breathitt Cty. Bd. of Educ., 134 F.3d 796, 801 (6th Cir. 1998); see also Korte v. Diemer, 909 F.2d 954, 959 (6th Cir. 1990) ("A finding of 'sex discrimination in compensation' under one Act is tantamount to a finding of 'pay discrimination on the basis of sex' under the other.").  Throughout this litigation, White has clearly advanced a sex-based pay discrimination claim.  (See Docket Entries 3, 16, 31-1.)

The questions that have arisen concern whether White makes this claim under the EPA or Title VII or both the EPA and Title VII.  For instance, White repeatedly characterized her Complaint, which explicitly references only the EPA, as an "extension" of her Title VII EEOC charge.  (See Docket Entry 15 at 1.)  Furthermore, White filed the IFP Application so that she could meet the Title VII filing deadline (see Docket Entry 2 at 1), even though she anticipated paying — and did pay — the court filing fees months before her earliest possible EPA filing deadline (see id.; see also Docket Entry dated May 1, 2015 (acknowledging receipt of filing fees)).  Moreover, although it does not explicitly reference the EPA, the Revised Proposed Amended Complaint contains additional details regarding White and Powell's duties and pay discrepancy (compare Docket Entry 31-1 at 2-3, with Docket Entry 16 at 5-6),

15

for the apparent purpose of mitigating issues that the Center raised in its opposition to the Initial Leave Motion regarding the adequacy of White's EPA allegations (see Docket Entry 24 at 5, 8-10; see also Docket Entry 23 at 3 ("[White] filed an Equal Pay Act claim against [the Center] . . . . [White] did not and cannot file a claim for violation of Title VII . . . . [White] must meet the pleading elements of an Equal Pay Act claim, which she has not.")). In addition, White retains the request for doubled back pay — an EPA remedy — in her Revised Proposed Amended Complaint. (See Docket Entry 31-1 at 4; compare 29 U.S.C. § 216(b) (EPA liquidated damages), with 42 U.S.C. § 2000e-5(g) (Title VII relief).) Under these circumstances, the Court declines to find that White, a pro se litigant, has abandoned her EPA claim through her Revised Leave Motion. The Court instead directs White to clarify in her amended complaint whether she wishes to proceed solely under Title VII or whether she wishes to pursue both Title VII and EPA claims.

### V. Remaining Motions

In sum, the Court grants the Revised Leave Motion and directs White to file an amended complaint as detailed herein. As such, the Initial Leave Motion is moot. See Gould v. Bertie Cty., Civ. Action No. 5:14-CT-3066, 2014 WL 3854076, at *1 (M.D.N.C. Aug. 5, 2014) ("Because the court DIRECTS plaintiff . . . to amend his complaint . . ., plaintiff's remaining motions to amend and motion

16

for equitable tolling are DENIED as MOOT." (emphasis in original)).[11] Similarly, the filing of an amended complaint moots a motion to dismiss. Mooney v. Cato Corp., No. 107CV76, 2007 WL 2406961, at *1 (M.D.N.C. Aug. 20, 2007) ("As a matter of law, defendant's Motion to Dismiss is mooted by the filing of the Amended Complaint."). Accordingly, upon the filing of White's amended complaint, the Clerk shall administratively terminate the Motion to Dismiss.

## CONCLUSION

White's proposed Title VII sex discrimination claim relates back to the filing of her Complaint, rendering it timely and non-futile. White failed to timely administratively exhaust her Title VII race discrimination claim, however, rendering it futile. Finally, White must clarify whether she wishes to pursue an EPA claim.

**IT IS THEREFORE ORDERED** that the Revised Leave Motion (Docket Entry 31) is **GRANTED IN PART** as follows: on or before April 1, 2016, White shall file an amended complaint that (i) adds her Title VII sex discrimination claim and (ii) clarifies whether she pursues both an EPA claim and a Title VII sex discrimination claim or whether she instead pursues only a Title VII sex discrimination claim.

---

11 White may attach her EEOC charge to the amended complaint.

17

**IT IS FURTHER ORDERED** that the Initial Leave Motion (Docket Entry 16) is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that the Clerk administratively **TERMINATE AS MOOT** the Motion to Dismiss (Docket Entry 11) when White files her amended complaint.

This 11th day of March, 2016.

                                        /s/ L. Patrick Auld
                                           **L. Patrick Auld**
                              **United States Magistrate Judge**